

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 111 | **DATE** | 9/9/2003 |
| **CASE TITLE** | MILDRED A. BUMPERS vs. BANK ONE, N.A., AS TRUSTEE, |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the n of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court reverses
     bankruptcy court's decision to the extent that Ms. Bumpers should be given an opportunity to rebut
     presumption of delivery of the required TILA disclosures and remands this case to address this issue a
     any other remaining matters. The Court, however, affirms the bankruptcy court's decision regarding M
     Bumpers' claim based on the conflicting TILA disclosures presented to her. The stay of the enforcem
     of the state proceedings remains in effect until the bankruptcy court addresses the issue.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | SEP 1 1 2003 | | |
| | Notified counsel by telephone. | | date docketed | | 19 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | | |
| ✓ | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | | |
| | | | date mailed notice | | |
| CG | courtroom deputy's initials | | Date/time received in central Clerk's Office | | mailing deputy initials |

CLERK
U.S. DISTRICT COURT

03 SEP 11 PM 4:24

FILED FOR DOCKETING

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**DOCKETED**

**SEP 1 1 2003**

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MILDRED A. BUMPERS, | ) | |
|         Debtor. | ) | |
| | ) | |
| ——————————————— | ) | |
| | ) | |
| BANK ONE, N.A., AS TRUSTEE, | ) | Judge Ronald A. Guzmán |
| SUCCESSOR IN INTEREST TO THE FIRST | ) | |
| NATIONAL BANK OF CHICAGO, | ) | 03 C 111 |
| AS TRUSTEE, | ) | |
| | ) | |
|         Plaintiff-Appellee, | ) | |
|    v. | ) | |
| | ) | |
| MILDRED A. BUMPERS | ) | |
| | ) | |
|         Defendant-Appellant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant-Appellant Mildred A. Bumpers' ("Ms. Bumpers")
appeal from the United States Bankruptcy Court's granting Plaintiff-Appellee Bank
One's motion for summary judgment. For reasons stated herein, the Court affirms in part
and reverses and remands in part.

## FACTS

This case arises from a loan transaction that took place on September 21, 1998.
Dolphin Mortgage ("Dolphin"), a mortgage broker, arranged for Ms. Bumpers to enter
into a refinancing agreement with Liberty Lending Corporation ("Liberty Lending"), a
creditor, whereby Ms. Bumpers obtained a loan secured by her home from LL Funding
Corp. ("LL Funding"), a subsidiary of Liberty Lending. As a part of the loan transaction,



Ms. Bumpers signed a note in the principal amount of $89,200, and a mortgage for the same amount. On August 3, 1999, the mortgage and note were subsequently assigned to First National Bank of Chicago, as Trustee, now known as Bank One, the Plaintiff-Appellee. Bank One is currently the holder of the note and mortgage.

Bank One filed a foreclosure action against Ms. Bumpers in the Circuit Court of Cook County on August 20, 1999, after Ms. Bumpers defaulted as to her mortgage payments. On March 13, 2000, Bank One was granted a judgment of foreclosure in Cook County Circuit Court against Ms. Bumpers' home, along with a finding that Bank One had a valid and subsisting lien on the property in the amount of $97,272.58. A final date for redemption was set for June 14, 2000, and a foreclosure sale was set for June 20, 2000. On June 18, 2003, this Court granted Ms. Bumpers' motion to stay the enforcement of the state law proceedings pending this appeal.

Ms. Bumpers voluntarily filed a petition for bankruptcy as an individual under Title 13, United States Code on April 27, 2000. Ms. Bumpers' Chapter 13 plan, which identified Bank One as a secured creditor in the schedules accompanying her petition, was confirmed on June 20, 2000. On June 27, 2000, Ms. Bumpers filed a Motion to Approve First Amended Chapter 13 Plan, seeking to have Bank One's claim reclassified as unsecured, a decision which the bankruptcy court declined to address until the completion of the current proceedings.[1]

On April 10, 2001, Ms. Bumpers sent notice stating her intent to rescind Bank

---

[1] The bankruptcy court properly found that the decision in this case of whether Bank One is a properly secured lien holder would have a large impact on the bankruptcy court's response to this motion and deferred any decision until the completion of the current proceedings.

One's mortgage pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* Bank One filed an adversary complaint in Ms. Bumpers' bankruptcy case on May 24, 2001 and alleged that Ms. Bumpers did not have a right to rescind the loan, submitting in support Truth in Lending disclosure statements bearing the clear signature of Ms. Bumpers. On June 26, 2001, Ms. Bumpers filed an answer, an affirmative defense, and counterclaims, seeking declaratory and injunctive relief, as well as statutory and actual damages for Bank One's failure to comply with TILA procedures. Ms. Bumpers alleged she did not receive accurate material disclosures in a form she could keep from LL Funding at the time of the transaction, or from LL Funding or Bank One at any time thereafter. Additionally, Ms. Bumpers asserted a right to rescind Bank One's mortgage because the disclosure statements in her possession from Dolphin were inconsistent with the disclosures that Bank One held, containing inaccuracies in the amounts financed, the finance charge, and the annual percentage rate, and thus did not comply with TILA requirements. Therefore, Ms. Bumpers claimed that, due to TILA violations, she maintained a continuing right of rescission for up to three years from the date of the mortgage. *See* 15 U.S.C. § 1635(f).

Bank One filed a motion for summary judgment. On November 19, 2002, Bankruptcy Judge Altenberger granted Bank One's motion for summary judgment and denied the counterclaims of Ms. Bumpers, finding that Ms. Bumpers did not have a valid right to rescind her mortgage for TILA violations on either of her claims. Judge Altenberger found that: (1) Ms. Bumpers' signature on documents acknowledging receipt of the required TILA documents constituted conclusive proof of delivery and precluded her claim for rescission based on ineffective delivery against Bank One, an

3

assignee of the original creditor; and (2) the inconsistent disclosures presented to Ms. Bumpers by LL Funding and Dolphin at the closing of her loan transaction did not provide Ms. Bumpers with a valid right to rescind her mortgage for TILA violations because the inconsistent disclosures presented were not provided by the same party and no evidence existed of an agency relationship between the parties. On November 27, 2002, Ms. Bumpers timely filed a Notice of Appeal from the Bankruptcy Court's decisions.

## DISCUSSION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). This Court acts as an appellate court when reviewing a bankruptcy court decision and applies the same standards of review as are appropriate in other appellate decisions. *Green v. Massachusetts Cas. Ins. Co.*, 269 B.R. 782, 787 (N.D. Ill. 2001). The court reviews the grant of summary judgment *de novo*. *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003). *De novo* review requires the district court to make an independent examination of the bankruptcy court's judgment without giving deference to that court's analysis or conclusions. *Zygulski v. Daugherty*, 236 B.R. 646, 651 (N.D. Ind. 1999).

The Truth in Lending Act (TILA) is a federal statute that regulates the terms and conditions of consumer credit. *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 751 (7th Cir. 2000). Congress enacted TILA in 1968 to ensure that debtors receive accurate information from creditors in a precise and uniform manner that allows them to compare the cost of credit and to protect unsophisticated debtors from being misled as to the total costs of financing. *Id.*; *Williams v. Gelt Fin. Corp.*, 237 B.R. 590, 594 (E.D. Pa. 1999).

4

The declared purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *Beach v. Ocwen Fed'l Bank*, 523 U.S. 410, 412 (1998); *see* 15 U.S.C. § 1601(a). The Truth in Lending Act is to be construed liberally in favor of the debtor. *Rochon v. Citicorp Mortgage, Inc.*, 94 C 3326, 1996 WL 167056, at *2 (N.D. Ill. Apr. 5, 1996).

Failure to satisfy TILA subjects a creditor to criminal penalties for noncompliance, as well as to statutory and actual damages traceable to a creditor's failure to make the requisite disclosures. *Beach*, 523 U.S. at 412; *see* 15 U.S.C. § 1601(a). TILA also authorizes a borrower, whose loan is secured with a "principal dwelling," and who has been denied the requisite disclosures, to rescind the loan transaction entirely "until...the third business day following the consummation of the transaction or the delivery of the information and rescission forms required...together with a statement containing the material disclosures required..., whichever is later." *Beach*, 523 U.S. at 412; *see* 15 U.S.C. § 1635(a). The debtor's right of rescission "expire[s] three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first," even if the required disclosures have never been made. *Beach*, 523 U.S. at 413; *see* 15 U.S.C. § 1635(f). After receiving notice of rescission, the creditor must "return to the borrower any money or property given as earnest money, down payment, or otherwise, and...take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." *Beach*, 523 U.S. at 413; *see* 15 U.S.C. § 1635(b).

Ms. Bumpers seeks to rescind the loan transaction at issue based on two avenues. First, she claims that she never received delivery of the disclosures required under TILA and that her signature on statements acknowledging receipt of these documents did not constitute conclusive proof of delivery. Second, in the alternative, Ms. Bumpers contends that she signed disclosures from the initial creditor and the mortgage broker that were inconsistent in violation of the TILA requirement that disclosures be made to debtors clearly and conspicuously. This Court addresses each argument in turn.

## I. Bankruptcy Court's Grant of Summary Judgment Pursuant to 15 U.S.C. § 1641

Ms. Bumpers first argues that the bankruptcy court erred when it applied 15 U.S.C. § 1641(b) and held that Ms. Bumpers' signature on statements acknowledging receipt of required TILA disclosures constituted conclusive proof of delivery and that she did not have the right to rescind the loan transaction secured by her principal residence against Bank One, an assignee. Ms. Bumpers contends that the "irrebuttable presumption" of delivery provided in § 1641(b), a statute limiting assignee liability, is inapplicable to rescindable transactions and the "rebuttable presumption" provision found in § 1635(c) more appropriately governs because that section was intended to apply to all loans subject to the right of rescission, and especially in cases where a security interest is retained in property used as the debtor's principal dwelling. Bank One argues that § 1641(b) explicitly limits assignee liability and that § 1635(c) only applies in cases dealing with the original creditor. Bank One claims that Ms. Bumpers' signatures attesting to the receipt of the required TILA disclosures constituted conclusive proof that Ms. Bumpers was provided with the disclosures such that it as a subsequent assignee

6

should have been able to rely upon them.

The issue before this Court is whether the signature of a debtor on a statement acknowledging receipt of required TILA disclosures constitutes conclusive proof of delivery when a debtor brings a claim for rescission against an assignee based on a loan secured by the debtor's principal residence, and correspondingly which statute to apply, § 1641 or § 1635. Accordingly, the dispute concerns the bankruptcy court's interpretation of the TILA statutory scheme.

Under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, when a loan made in a consumer credit transaction is secured by the borrower's "principal dwelling," the borrower may rescind the loan agreement if the lender fails to deliver certain forms. *Beach*, 523 U.S. at 411; *see* 15 U.S.C. § 1635. The creditor must deliver to the debtor two copies of a notice of the right to rescind and one copy of a TILA disclosure statement containing the material disclosures. *See* 15 U.S.C. § 1635(a); 12 C.F.R. §§ 226.15(b), 226.23(b). The required disclosures are not effectively delivered to the debtor until given in a form the debtor can keep. *Jenkins v. Landmark Mortgage Corp.*, 696 F. Supp. 1089, 1093 (W.D. Va. 1988). TILA regulations give consumers three days from the delivery of a notice to rescind or delivery of all material disclosures, whichever occurs last, to rescind a transaction. *Pulphus v. Sullivan*, No. 02 C 5794, 2003 WL 1964333, at *12 (N.D. Ill. Apr. 28, 2003); *see* 12 C.F.R. § 226.23(a)(3). If, however, the notice or material disclosures are not delivered, the debtor has three years from the date the transaction was consummated to rescind. *Pulphus*, 2003 WL 1964333, at *12; *see* 12 C.F.R. § 226.23(a)(3).

Section 1641 governs the liability of assignees and provides:

7

> Except as provided in section 1635(c) of this title, in any action or proceeding by or against any subsequent assignee of the original creditor without knowledge to the contrary by the assignee when he acquires the obligation, written acknowledgment of receipt by a person to whom a statement is required to be given pursuant to this subchapter shall be conclusive proof of the delivery thereof and, except as provided in subsection (a) of this section, of compliance with this part.

15 U.S.C. § 1641(b). § 1641(a) states, "Except as otherwise…provided in this subchapter, any…action for a violation of this subchapter which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action… is brought is apparent on the face of the disclosure statement…." 15 U.S.C. § 1641(a).

Section 1635, in turn, governs the rights of debtors entering into credit transactions in which a security interest is retained in property used as the debtor's principal dwelling, giving the debtor the right of rescission in certain situations. Section 1635(c) states, "[W]ritten acknowledgement of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof." 15 U.S.C. § 1635(c). If given the chance to rebut the presumption of delivery of the required disclosures, the debtor may testify that the required disclosures were not provided by the original creditor, which, if credible, would shift the burden to the creditor or the creditor's assignee to produce evidence that the disclosures were given. *In re Pinder*, 83 B.R. 905, 913 (Bankr. E.D. Pa. 1988).

In the case at hand, the bankruptcy court held that § 1641(b)'s "conclusive proof" standard was appropriate to Ms. Bumpers' case and not § 1635(c)'s "rebuttable presumption" standard. The bankruptcy court determined that § 1641(b), a statute

8

strictly applying to assignees, is more specific than the "more general" § 1635(c) and, as a result, the more specific statute must govern. Additionally, the bankruptcy court based its decision in part on the inconsistency between Ms. Bumpers' claim that she did not receive delivery of the required disclosures and her signature on documents acknowledging receipt of the documents at issue.

Ms. Bumpers contends that her signature on the TILA document acknowledging receipt does not constitute conclusive proof of delivery and that, before the bankruptcy court dismissed the case on summary judgment, she should have been given the chance to rebut the presumption of delivery, even where the obligation was assigned. In her argument, Ms. Bumpers persuasively argues that the bankruptcy court should have followed TILA's statutory scheme and applied § 1635(c), which applies when a security interest is retained in the principal dwelling of a debtor and states that written acknowledgment of receipt by a debtor of required disclosures only creates a rebuttable presumption that the documents were delivered. Ms. Bumpers reasons that § 1641(b) provides for an exception when § 1635(c) is applicable, and cites the statutory language at the beginning of § 1641, which provides, "[e]xcept as provided in section 1635(c)...," as well as language in § 1641(c), which states that "any [debtor] who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." Ms. Bumpers maintains that § 1635 and § 1641 do not conflict as the bankruptcy court suggested and that the exception provided in § 1641 prescribes a different standard in the case of rescission. She claims that without reading § 1641 as allowing this exception, the clause provided in the statute would be meaningless, a fate not intended by the legislature. Thus, Ms. Bumpers' claim is that,

9

when rescission of a loan transaction secured by the debtor's principal residence is the issue under TILA, § 1635(c) should apply, which states that the debtor's signature on documents acknowledging receipt raises only a rebuttable presumption that the required disclosures were delivered to the debtor. In her case, Ms. Bumpers argues that she should have been given the chance to rebut the presumption that LL Funding delivered the required TILA disclosures.

After a review of TILA's statutory scheme, precedent, and the facts of this case, this Court finds that § 1641's "conclusive proof" standard is inapplicable to the case at hand and that Bank One is subject to the rescission right of Ms. Bumpers to the same extent as the original creditor, LL Funding. While Bank One agrees with the bankruptcy court and contends that rescission claims asserted against it should be dismissed because of the exemption provided to assignees by § 1641, this Court holds that the bankruptcy court should have applied § 1635(c).

In *In re Williams*, the issue arose whether the debtor was provided with disclosures in a written form as required by TILA. 291 B.R. 636 (Bankr. E.D. Pa. 2003). In that case, the loan was assigned to a different mortgage company and the assignee argued that the debtor's signature on the disclosure constituted conclusive proof of delivery. *Id.* at 642. The court held otherwise: "As the first phrase in [§ 1641(b)] indicates, the conclusive presumption created by § 1641 does not apply when § 1635(c) is applicable....Consequently, the conclusive presumption of § 1641(b) is inapplicable and the rebuttable presumption created by § 1635(c) applies." *Id.* at 650. Accordingly, the court in that case held that the debtor's signature on the TILA disclosures acknowledging receipt did no more than create a rebuttable presumption that the debtor

10

received them and that the debtor should be given the chance to rebut the presumption. *Id.*

Similarly, in *Bryant v. Mortgage Capital Resource Corp.*, a debtor brought an action for rescission against the assignees of a creditor based on TILA violations. 197 F. Supp. 2d, 1357, 1359-60 (N.D. Ga. 2002). The issue in that case again was whether, in a case involving a rescindable TILA transaction, a writing acknowledging receipt of the disclosures required constituted "conclusive proof" of compliance with TILA as provided for in § 1641(b). *Id.* at 1362. The *Bryant* court held that § 1635 governs the rights of a debtor entering into a credit transaction in which a security interest is retained in property used as the debtor's principal dwelling and allows a debtor to rescind a loan transaction for TILA delivery violations against an assignee, even where the assignee has the debtor's signature attesting to the receipt of loan documents at issue. *Id.* "Congress explicitly excepted transactions subject to the operation of section 1635(c) from the 'conclusive proof' standard enunciated in section 1641(b)" and excepted transactions falling under § 1635(c) from the reach of § 1641(b). *Id.* at 1363. Therefore, the court in *Bryant* held that the "conclusive proof" standard found in § 1641(b) does not operate as an absolute defense for use by an assignee against a debtor claiming rescission. *Id.*

This Court finds the reasoning in *Williams* and *Bryant* persuasive and holds that Ms. Bumpers' signature on the TILA disclosures acknowledging receipt merely created a rebuttable presumption of delivery. Ms. Bumpers' claim for rescission was based on a loan secured by her principal residence and thus § 1635(c), as opposed to § 1641(b), provided the appropriate standard. Before her case was dismissed on summary judgment, Ms. Bumpers should have been given the chance to provide evidence to the bankruptcy

11

court that she did not receive the required documents. The plain language of the provisions at issue, as well as the legislative history, indicate an intention by Congress to allow for an exception to the use of § 1641 when § 1635 is applicable. Otherwise, the exception clause in § 1641(b) would be rendered superfluous, a fate that courts should avoid. *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001). Thus, this Court reverses and remands Ms. Bumpers' case so that the bankruptcy court can allow Ms. Bumpers to attempt to rebut the presumption of delivery of the TILA documents at issue.[2]

## II. Conflicting TILA Disclosure Statements

Ms. Bumpers next argues that the bankruptcy court erred in finding that Bank

---

[2]In the alternative, Bank One claims that, even if Ms. Bumpers can prove that she did not receive delivery of the required TILA disclosures, it, as an assignee, should not be held liable for the wrongdoing of the original creditor since the alleged TILA violation was not apparent on the face of the documents it received from LL Funding, the original creditor. Bank One points to language in § 1641(a), which states that any action for a violation of TILA which may be brought against a creditor may be maintained against an assignee of such creditor only if the violation for which such action is brought is "apparent on the face of the disclosure statement." *See* 15 U.S.C. § 1641(a).

While the bankruptcy court will have the chance to respond to Bank One's argument on remand, this Court points out that, similar to Bank One's argument regarding whether Ms. Bumper's signature on documents acknowledging receipt provided conclusive proof of delivery or a rebuttable presumption, an exception is provided for in § 1641(c) when § 1635 is applicable and thus a debtor's right to rescind a transaction under TILA is unaffected by an assignment. *See Fairbanks Capital Corp. v. Jenkins*, 225 F. Supp. 2d 910, 913 (N.D. Ill. 2002). The right to rescission provided under § 1635(c) is an exception provided for that is equally enforceable against original creditors and assignees. *Pulphus v, Sullivan*, No. 02-C-5794, 2003 WL 1964333, at *16 (N.D. Ill. April 28, 2003). According to § 1641(c), "Any [debtor] who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." 15 U.S.C. § 1641(c). Section 1641(c) refutes any claims by an assignee of absolute protection from claims of rescission when a loan is secured by a debtor's principal residence, even when no violation is apparent on the face of the document presented to the assignee.

The legislative history of § 1641 supports this position. Senate reports show that § 1641(c) was added in 1980 by Congress to "eliminate ambiguity on the question of assignee liability for rescission by stating explicity [sic] that a consumer's exercise of this right is effective against an assignee." *Stone v. Mehlberg*, 728 F. Supp. 1341, 1348 (W.D. Mich. 1989) (citing S. Rep. No. 96-368, 96th Cong., 2d Sess. 32-33, *reprinted in* 1980 U.S.C.C.A.N. 236, 268). To allow assignees "to assert their status to foil an otherwise meritorious rescission action would gut 15 U.S.C. § 1641(c)" and "sanction a situation in which 'the right of rescission would provide little or no effective remedy.'" *Id.* (quoting S. Rep. No. 96-368, 96th Cong., 2d Sess. 32-33, *reprinted in* 1980 U.S.C.C.A.N. 236, 268).

One did not violate the "clear and conspicuous" requirement of TILA when Ms. Bumpers signed two disclosure statements that contained inconsistent terms at the closing of the loan transaction. Ms. Bumpers claimed that, by signing two inconsistent TILA disclosures on the same date, at the same closing, she could not discern which disclosure reflected the accurate terms of her loan and that the ambiguity was a violation of TILA standards.

The Truth in Lending Act is Congress's effort to guarantee the accurate and meaningful disclosure of the costs of consumer credit and thereby to enable consumers to make informed choices in the credit marketplace. *See* RENUART, ELIZABETH & KEEST, KATHLEEN, E., TRUTH IN LENDING 33 (4th ed. 1999). Under TILA, when a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement if the lender fails to disclose important terms accurately. *Beach v. Ocwen Fed'l Bank*, 523 U.S. 410, 411 (1998); *see* 15 U.S.C. § 1635. TILA requires creditors to provide borrowers with clear and accurate disclosures of various material terms dealing with the loan transaction so that the consumer will be able to compare more readily the various credit terms available and avoid the uninformed used of credit, and to protect the consumer against inaccurate and unfair credit billing practices. *Beach*, 523 U.S. at 412; 15 U.S.C. § 1601(a)).

To accomplish its purpose of informing consumers of the true cost of credit, TILA and Regulation Z[3] require creditors to disclose certain terms to consumers and to

---

[3]Regulation Z, 12 C.F.R. §§ 226.1-.30, provides a comprehensive set of Truth in Lending rules. The Board of Governors of the Federal Reserve System issued Regulation Z to carry out the purposes of the Truth in Lending Act. *See* Elwin Griffith, *Truth in Lending—Rescission and Disclosure Issues in Closed-end Credit*, 17 NOVA L. REV. 1253 n. 4 (1993).

make the required disclosures clearly and conspicuously in writing. *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 751 (7th Cir. 2000); *In re Ralls*, 230 B.R. 508, 515 (Bankr. E.D. Pa. 1999); *see* 15 U.S.C. § 1638(b)(1); 12 C.F.R. § 226.17(a)(1). Additionally, the disclosures provided must reflect the actual terms of the legal obligations between the parties. *In re Ralls*, 230 B.R. at 515; *see* 12 C.F.R. § 226.17(c)(1). More specifically, TILA dictates that the creditor provide the borrower with accurate disclosures of the amount financed, the finance charge, the finance charge expressed as an annual percentage rate, and the total of the payments that will be required of the borrower. *See* 15 U.S.C. § 1638. These disclosures, if in fact inaccurate, would clearly constitute "material" disclosure violations which would justify a rescission. *In re Ralls*, 230 B.R. at 515; *see* 15 U.S.C. § 1602(u) (the amount to be financed, the amount of the finance charge, the annual percentage rate, and the total of payments are among the "material disclosures" which must be accurate to preclude a rescission under 15 U.S.C. § 1635(a)).

Ms. Bumpers claims that, at the September 21, 1998 closing of the loan transaction, she signed a Truth in Lending disclosure statement that contained a *10.9% fixed* annual percentage rate (APR) (the "10.9% fixed disclosure"), as well as a disclosure statement which had a *12.032% variable* APR (the "12.032% variable disclosure"). As a result of the discrepancy in the APRs between the two disclosure statements, the figures for the finance charge, the amount financed, and the total of payments were different as well. Ms. Bumpers in her claim for rescission argues that these differences created an

---

ambiguity that was material and constituted a violation of TILA's mandate that creditors disclose terms to consumers clearly and conspicuously.

The bankruptcy court, in ruling against Ms. Bumpers, did not recognize a right to rescission on this ground because the inconsistent disclosures that Ms. Bumpers signed were prepared by two different parties, one by the creditor and the other by the mortgage broker, with no indication that the mortgage broker was an agent of the creditor. The 10.9% fixed disclosure indicated that it was prepared by Dolphin, the mortgage broker, while the 12.032% variable disclosure designated that it originated from LL Funding, the creditor. Additionally, the bankruptcy court found that Ms. Bumpers was unable to establish that Dolphin, the purveyor of the incorrect TILA disclosure, was an agent of the creditor, LL Funding.

The bankruptcy court primarily relied on *In re Ralls*, 230 B.R. 508 (Bankr. E.D. Pa. 1999), a case which recognizes a right of rescission under TILA when a debtor is given multiple, internally inconsistent documents. In *Ralls*, the debtor received a number of documents at a closing on a loan related to the debtor's principal residence. *Id.* at 513. The documents given to the debtor by the creditor at the closing, one of which was a TILA disclosure statement, presented inconsistent terms for the APR, finance charge, amount financed, and total of payments. *Id.* at 516. After the loan transaction took place, the debtor sought to rescind the loan in question, claiming that the creditor violated TILA requirements by failing to accurately disclose the APR, the amount financed, and the finance charge. *Id.* at 514. The court in that case held that the creditor's presentment of the TILA disclosure statement inconsistent with several of the material terms set forth in the other loan documents constituted a violation of the principles of TILA and was

15

sufficient to trigger the debtor's rescission rights. *Id.* at 516-17.

In the instant case, the bankruptcy court distinguished Ms. Bumpers' situation from *Ralls* by pointing out that the inconsistent disclosures in *Ralls* were provided by the same party, the creditor, while here, the documents with differing terms were presented by two separate parties, the creditor and the mortgage broker. The bankruptcy court noted Ms. Bumpers' inability to produce any evidence of an agency relationship between LL Funding and Dolphin, a link that might have allowed the bankruptcy court to follow the holding in *Ralls*. Ultimately, the bankruptcy court found and this Court agrees that the inconsistent disclosures provided by the mortgage broker and the creditor did not constitute a TILA violation, and thus was not a ground on which Ms. Bumpers could justify rescission.

Although not affecting this Court's affirmation of the bankruptcy court's ruling on this particular issue, it should be noted that the bankruptcy court apparently was in error when it distinguished the present case from *Ralls* with reference to an inconsistent handwritten document that Dolphin provided to Ms. Bumpers a month before the closing of the loan transaction at issue. The record clearly shows that Ms. Bumpers presented a typed document prepared by Dolphin and signed by Ms. Bumpers on the day of the closing. (Def.'s Rule 402.N Response, Ex. 3; *see also* Opening Br. Def.-Appellant, at 14.) Although Ms. Bumpers correctly pointed out this inaccuracy, the Court still affirms the bankruptcy court's decision even in light of Dolphin's typed disclosure document.

Ms. Bumpers in her appeal to this Court maintains that the bankruptcy court's ruling should be overturned based on the ambiguous documents presented to her at the closing. However, Ms. Bumpers fails to distinguish her case from *Ralls* and the reading

16

of that case by the bankruptcy court. Additionally, in the process, Ms. Bumpers cites precedent that does not serve to strengthen her cause.

First, Ms. Bumpers states that the closing was conducted "by the lender or an agent of the lender." (Reply Br. Def.-Appellant, at 5.) At the same time, in an affidavit, Ms. Bumpers states that Dolphin, the mortgage broker, is the party that presented her with the inaccurate TILA disclosure statement at the closing and provided an incorrect explanation of the terms of the transaction. (Def.'s Rule 402.N Response, Ex. 1, Bumpers Aff. ¶¶ 7, 9.) This description of what happened at the closing does nothing for Ms. Bumpers' case as she is still unable to provide the link for which the bankruptcy court was searching in order to find LL Funding responsible for Dolphin's actions. Despite the fact that both parties were present at the closing, the bankruptcy court found that Ms. Bumpers was unable to produce any evidence of an agency relationship between LL Funding and Dolphin.

Ms. Bumpers' emphasis on the fact that both the creditor and the mortgage broker were present at the closing when the inconsistent disclosures were presented is likely based on a hope that this Court will find that enough of a relationship existed between LL Funding and Dolphin to link the two together in an implied agency-principal relationship, and that LL Funding was responsible for Dolphin's actions at the closing. In this type of situation, in determining whether a broker can be deemed an agent of a particular lender, a court must examine the facts surrounding the transaction in question. *In re Dukes*, 24 B.R. 404, 414 (Bankr. E.D. Mich. 1982). If in the sound judgment of the court the cumulative effect of the evidence presented indicates that the party claiming to be a mere broker, in fact had a closer relationship or far more authority than that of simply bringing

the borrower and lender together, the court may deem the broker to be the agent of the lender. *Id.*

In *Dukes*, the debtor met the burden of establishing an agency relationship between the creditor and the broker. The debtor presented evidence that the broker conducted all the meetings and negotiations concerning the loan, prepared and executed all documents necessary to the transaction, conducted the actual closing of the loan, and that the debtor had no contact with the creditor. *Id.* Additionally, the debtor was able to show that the broker used forms with the creditor's name on the letterhead, and the fact that 50 to 60 percent of the loans placed by the broker for its customers were placed with the creditor in question. *Id.* In the case at hand, Ms. Bumpers had the chance to offer sufficient evidence of an agency-principal relationship between LL Funding and Dolphin to the bankruptcy court, but that court found that she did not present a genuine issue as to this material fact to survive the summary judgment motion. This Court holds that the record fails to contain sufficient facts such that a jury could reasonably infer an agency relationship between LL Funding and Dolphin. The mere presence of representatives from LL Funding and Dolphin at the closing does not an agency relationship make.

Second, Ms. Bumpers cites *Jenkins v. Landmark Mortgage Corp. of Va.*, 696 F. Supp. 1089 (W. D. Va. 1988), to support her position that the provision of conflicting documents at the closing of a loan transaction provides the basis for rescission under TILA. However, that case does nothing to distinguish her case from *Ralls*. In *Jenkins*, the debtor was shown, but not given, a complete and accurate set of TILA disclosures. *Id.* at 1091. However, the attorney for the creditor who conducted the closing orally gave her an inaccurate explanation of the rescission process. *Id.* Subsequently, the disclosures

18

were mailed to her with a cover letter from the attorney that also inaccurately described her rescission rights. *Id.* at 1091-92. The court held that the inaccurate oral and written statements, although inadvertent, rendered the required rescission disclosure not "clear and conspicuous." *Id.* at 1095. More importantly, however, is the fact that the court found that the attorney acted as an agent for the original lender in the closing process. *Id.* at 1091. Thus, while the *Jenkins* court did allow for rescission when a creditor presented inconsistent representations to a debtor, in relation to the case at hand, the *Jenkins* case is similar to *Ralls* in that the conflicting disclosures were made by the principal or its agent. Without an agency-principal connection between Dolphin and LL Funding, neither *Jenkins* nor *Ralls* justifies this Court's departure from the bankruptcy court's holding that LL Funding cannot be held liable for representations made by Dolphin.

Finally, Ms. Bumpers cites *Pulphus v. Sullivan*, No. 02 C 5794, 2003 WL 1964333, at *1 (N.D. Ill. Apr. 28, 2003), a case which does not present a clear enough picture to lend support for Ms. Bumpers' position. In *Pulphus*, a case which postdates the bankruptcy court's rendering of summary judgment, a debtor at a closing of a loan transaction was presented with multiple documents to sign by a mortgage broker, a title company representative, and an individual engaged in the business of providing home improvement services. *Id.* at *1-2. Among the documents were two conflicting TILA disclosures. *Id.* The *Pulphus* court held that "[the debtor's] allegation that she received two, contradictory TILA disclosures simultaneously is equivalent to alleging that she received none, a paradigmatic violation of TILA." *Id.* at *15.

*Pulphus* does not provide any indication of whether an agency relationship existed between the creditor and the mortgage broker or any of the other parties or who

presented the inconsistent disclosures. The court in that case may have found that the mortgage broker or the mortgage closer was an agent of the creditor, especially since it seems that the creditor was not present at the closing, and that this agent may have presented both of the conflicting documents. In that scenario, *Pulphus* would not be distinguishable from *Jenkins* or *Ralls*. Thus, while the *Pulphus* court did find that the debtor's reception of conflicting TILA disclosures was a TILA violation, without more facts to clarify what exactly took place, this Court cannot presume that the events differed from those of *Jenkins* or *Ralls*. Therefore, this Court finds *Pulphus* unpersuasive and affirms the bankruptcy court's decision on this issue.

Overall, Ms. Bumpers seems to rest her appeal regarding the inconsistent disclosures on the idea that, with or without an established relationship between a mortgage broker and creditor, a debtor presented with inconsistent documents should be able to rescind a loan transaction under TILA based on the ambiguity. However, the statutory scheme of TILA does not support that position. While TILA provides great protection to those involved in loan transactions, especially in the case of debtors who secure a loan with their principal residence, the statutory language containing the right of rescission clearly references the creditor and not other parties, such as the mortgage broker. Section 1635 states that "[t]he *creditor* shall clearly and conspicuously disclose...to any obligor...the rights of the obligor" and "[t]he *creditor* shall also provide...appropriate forms for the obligor." 15 U.S.C. § 1635(a) (emphasis added). Section 1602 of TILA defines a "creditor" as "[A] person who both (1) regularly extends...consumer credit...and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of

20

indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(f). In Ms. Bumpers' case, only LL Funding, the creditor, fits this description.

Further, congressional committee records concerning TILA reinforce the idea that the creditor was the focus of TILA as well. One congressional committee stated that, "[B]y requiring all *creditors* to disclose credit information in a uniform manner…the American consumer will be given the information he needs to compare the cost of credit and to make the best informed decision on the use of credit." *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 364 (1973) (quoting H.R. REP. No. 1040, 90th Cong., 1st Sess., 13 (1967)) (internal quotations omitted) (emphasis added). Again, congressional records make no reference to anyone but the creditor. Thus, when Ms. Bumpers refers to a passage from *Ralls* which states "the cardinal principle of the TILA is making sure that [all the documents in a given transaction and the disclosure statement] are identical…providing accurate information in order that the consumer can refer to it as a benchmark in his or her hypothetical 'shop for credit,' " *In re Ralls*, 230 B.R. 508, 516 (Bankr. E.D. Pa. 1999) (quoting *In re Martin*, 72 B.R. 126, 127-28 (Bankr. E.D. Pa. 1987)), the quoted material is really indicating the need for the *creditor* to provide consistent, accurate information so that the debtor can be assured of having the proper information when looking for a better deal and deciding whether to rescind the loan within the prescribed three-day period.[4]

---

[4] It should be noted that *In re Martin*, the case cited by *Ralls*, is another case where the inconsistency of a TILA disclosure came from the creditor or an agent of the creditor. In *Martin*, the court's concern was with a disclosure statement which disclosed a security interest which was disparate from that actually taken by the creditor. *In re Martin*, 72 B.R. 126, 127 (Bankr. E.D. Pa. 1987).

Thus, in affirming the bankruptcy court's ruling on this issue, this Court ultimately agrees with the bankruptcy court's reading of *Ralls* that, in order to find a presentation of inconsistent documents to a debtor to be a violation of TILA's prescription of "clear and conspicuous" disclosure, the conflicting documents must originate from the creditor or its agent. Therefore, this Court also agrees that Bank One, the assignee of LL Funding, cannot be held liable for the inconsistent disclosure provided by Dolphin at the closing of Ms. Bumpers' loan transaction. Based on Ms. Bumpers' inability to produce evidence of an agency relationship between LL Funding and Dolphin, as well as the consistency of the terms on all of the documents provided by LL Funding at the closing, this Court affirms the bankruptcy court's holding that the inconsistent document provided by Dolphin at the closing is not attributable to LL Funding or its assignee, Bank One, and therefore is not a violation of the TILA requirements and is not a ground for rescission.

## CONCLUSION

For the reasons set forth above, the Court reverses the bankruptcy court's decision to the extent that Ms. Bumpers should be given an opportunity to rebut the presumption of delivery of the required TILA disclosures and remands this case for further proceedings to address this issue and any other remaining matters. The Court, however, affirms the bankruptcy court's decision regarding Ms. Bumpers' claim based on the conflicting TILA disclosures presented to her. Because the Court is remanding this case to the bankruptcy court for further proceedings, the stay of the enforcement of the state proceedings remains in effect until the bankruptcy court addresses the issue.

**SO ORDERED**            **ENTERED:** *September 9, 2003*

**HON. RONALD A. GUZMAN**
**United States Judge**